IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHANIEL LEKAI HART,                          *

    Plaintiff,                                 *

v.                                             *       Civil Action No. GLR-14-1324

BOBBY SHEARIN,                                 *

    Defendant.                                 *

                       ******

**MEMORANDUM**

Pending before the Court is Defendant Bobby Shearin's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 12) and Plaintiff Nathaniel Lekai Hart's Motion for Leave to File an Amended Complaint (ECF No. 17).[1]  Having reviewed the Motions, the Court finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014).  For the reasons stated below, the Court will grant Hart's Motion to Amend and Shearin's Motion to Dismiss.

**BACKGROUND**

Hart is an inmate at the North Branch Correctional Institution ("NBCI").  He claims Shearin, who served as NBCI Warden during the time at issue, violated his rights under the First and Fourteen Amendments by prohibiting him from attending religious services for several months beginning in July of 2013.[2]

---

[1] On January 23, 2015, Hart filed a Motion for Leave to File an Amended Complaint (ECF No. 17). The Motion is in essence a supplement to his opposition reply (ECF No. 14), and will be granted as such by separate Order.

[2] Aside from this general allegation, Hart provides no facts to suggest Shearin was personally involved in prohibiting him from attending religious services.  See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).  Further, Hart does not allege or assert facts to suggest Shearin is culpable under a theory of supervisory liability.  See Shaw v. Stroud, 13 F.3d 791, 799

During the summer of 2013, there were numerous and frequent assaults on staff and inmates at NBCI. (ECF No. 12-7).  As a result, NBCI was placed on institutional lockdown on August 5, 2013.  (Id.).  To reduce assaults, inmates were housed according to their behavioral history.  (Id.).

In the months prior to and following the lockdown, Hart was housed primarily in Housing Unit ("HU") #1 and #2 with a short amount of time in HU #3.  (ECF Nos. 12-3, 12-7). Hart is currently housed in HU #2, a designated "step down unit," for inmates with a history of behavioral issues whose ability to transition to a less structured environment, such as the general population of HU #3 and HU #4, is in question.  (ECF No. 12-7).  Hart's records show a history of inmate rule violations including refusing housing, disobeying direct orders of staff, and tampering with security equipment and resultant sanctions.  (ECF Nos. 12-4).

For security and safety purposes, opportunities for HU #2 inmates to assemble are limited.  (ECF No. 12-7).  In his declaration, Frank Bishop, who succeeded Shearin as NBCI Warden, attests that HU #2 is on modified operational status pending completion of full screening of the population to a determine its maximum security designation.

> For safety and security purposes this included limited contact and at this time congregate religious services are not officered [sic] for the individuals in this particular housing unit, and specifically outside of the Unit setting. All movement is in small controlled numbers for recreation, showers, religious services, etc.  All inmates are free to worship within the confines of their cell or housing unit, TV video is offered and they also have access to a chaplain or other spiritual leader if they so request. All mandated minimum standards are being met during this transitional period.

(Id.).

On April 14, 2014, Hart filed a complaint through the Administrative Remedy Procedure

_____

(4th Cir. 1994) (setting forth requirements to show supervisory liability in a 42 U.S.C. § 1983 (2012) action).

("ARP") process, claiming that he was prevented from attending religious services and seeing the chaplain.  (ECF No. 12-5).  He claimed this continued for ten months and violated his constitutional rights.  (Id.).  The ARP was dismissed as untimely. On April 18, 2014, Hart filed an appeal, but does not appear to have received a response.  (ECF No. 14-1).  On April 18, 2014, Hart also filed this action seeking injunctive relief and compensatory and punitive damages in the amount of $400,000.

## DISCUSSION

### 1.  Standard of Review

"When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted).  Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (alteration in

original).

A "material fact" is one that might affect the outcome of a party's case.  Id. at 248; see

also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing

Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to

be "material" is determined by the substantive law, and "[o]nly disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment."  Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Shearin's Motion

will be construed as a Motion for Summary Judgment.

**2.  Exhaustion of Administrative Remedies**

Shearin contends Hart's claims are barred for failure to exhaust his administrative

remedies.  The Prisoner Litigation Reform Act ("PLRA") provides in pertinent part:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

 42 U.S.C. § 1997e.  The statute's exhaustion provision requires inmates to pursue administrative

grievances until they receive a final denial of the claims, appealing through all available stages in

the administrative process.  Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98

F.App'x 253 (4th Cir. 2004).  A claim which has not been exhausted may not be considered by

this Court.  See Jones v. Bock, 549 U.S. 199, 219-20 (2007).  Administrative exhaustion under §

1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading

requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an

affirmative defense to be pleaded and proven by defendant(s). See Jones, 549 U.S. at 215-16

(2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir.2005).

Administrative remedies must, however, be available to the prisoner and this Court is "obligated

to ensure that any defects in administrative exhaustion were not procured from the action or

inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir.

2007).

> [A]n administrative remedy is not considered to have been
> available if a prisoner, through no fault of his own, was prevented
> from availing himself of it. Conversely, a prisoner does not exhaust
> all available remedies simply by failing to follow the required steps
> so that remedies that once were available to him no longer are.
> Rather, to be entitled to bring suit in federal court, a prisoner must
> have utilized all available remedies "in accordance with the
> applicable procedural rules," so that prison officials have been
> given an opportunity to address the claims administratively.
> Having done that, a prisoner has exhausted his available remedies,
> even if prison employees do not respond.

Moore v. Bennette, 517 F. 3d 717, 725 (4th Cir. 2008) (internal citations omitted).

Shearin posits Hart did not exhaust his administrative remedies because he did not appeal

the dismissal of his ARP and bring the matter to the Inmate Grievance Office ("IGO"). In

support, Shearin has filed a declaration executed by Scott Oakley, Executive Director of the

IGO, attesting there is no record that Hart has filed an IGO grievance. (ECF 12, Ex. 3).

Filing a request for administrative remedy with the Warden of the Maryland prison in

which one is incarcerated is the first of three steps in the Administrative Remedy Procedure

process provided by the Division of Correction ("DOC") to its prisoners. If the Warden's

decision is not satisfactory to the inmate, the prisoner has ten calendar days to file an appeal with

the Commissioner of DOC. Md. Code Regs. 12.07.01.04B (2015). If this appeal is denied, the

prisoner has thirty days in which to file an appeal to the Inmate Grievance Office ("IGO"). See

Id. at 12.07.01.03, .05.B; see also Md. Code Ann., Corr. Servs. § 10-206 (West 2015). Hart

states he filed an appeal on April 18, 2014, on the same date he filed the Complaint in this case

(ECF No. 14).  It appears that Hart was unable to present his concerns the IGO because he did not await a response regarding his appeal.  (ECF Nos. 14, 17).  Accordingly, the Court finds Hart has not demonstrated exhaustion of available administrative remedies.

**3.  First Amendment Claim**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).  That retained right is not unfettered.  Prison restrictions that impact the free exercise of religion but are related to legitimate penological objectives do not run afoul of the U.S. Constitution.  See Turner v. Safley, 482 U.S. 78, 89-91 (1987).   The test to determine if restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation.  In addition, this Court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

With regard to the appropriate balancing of these factors, the Supreme Court has stated "that evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination." O'Lone, 482 U.S. at 349 (quotations omitted).  "Prison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise." Holt v. Hobbs, 135 S.Ct. 853, 864 (2015).

Defendant has presented uncontroverted evidence that heightened prison security and safety risks required a period of institutional lock-down with concomitant limitations on prisoner movement.  Prisoners were housed according to their behavioral histories.  During this period, religious assemblies for inmates with histories of behavioral problems were limited or cancelled due to staffing needs and to ensure the safety of inmates and corrections staff.  In this regard, Shearin demonstrates a valid connection between the limitations placed on congregate religious services during the lockdown period and legitimate penological concerns. Further, Defendant has provided evidence that during this time inmates were free to worship within the confines of their cell or housing unit.  A TV video is offered and they also have access to a chaplain or other spiritual leader by request.

In his Motion for Leave to File an Amended Complaint, Hart states he has never been given the opportunity to meet with a chaplain.  Further, Hart states that because he does not have a television in his cell, he cannot use the TV video offered, which prevents him from practicing his religion inside his cell.  Hart has not, however, filed a declaration or affidavit in support of his position that he requires a chaplain or TV video to practice his religion.

Under these circumstances, Shearin has shown the restrictions were related to legitimate penological objectives.[3]   Even when the facts are judged in the light most favorable to Hart, there is no genuine issues of material fact.  Thus, Shearin is entitled to summary judgment in his favor as a matter of law.

---

[3] Hart does not claim, nor does the record suggest an abridgment of the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  42 U.S.C. § 2000cc-1(a) (2012). Recently, in Holt, the Supreme Court "emphasize[d]that although RLUIPA provides substantial protection for the religious exercise of institutionalized persons, it also affords prison officials ample ability to maintain security." 135 S.Ct. at 866.

**4.  Equal Protection**

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated different from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Hart summarily states that his right to equal protection under Fourteenth Amendment has been violated.  He does not claim that he and a similarly situated inmate were treated differently or that the differential treatment was the result of discrimination.  To the extent he infers that his prison adjustment history did not warrant his placement in a housing unit with restricted movement, his assertion is belied by his prison records filed by Shearin.[4]  Hart's unsubstantiated claims to the contrary fail to suggest the existence of genuine issues of material fact.  The Court, therefore, finds his allegations do not give rise to an equal protection claim.  Accordingly, Shearin is entitled to summary judgment in his favor as to this claim.[5]

## CONCLUSION

For the foregoing reasons, Shearin's Motion for Summary Judgment (ECF No. 12) and Hart's Motion for Leave to File an Amended Complaint (ECF No. 17) will be granted.

---

[4] There is no constitutional right for a prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution.  See Sandin v. Conner, 515 U.S. 472, 483 (1995) (holding that protected liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life).  Matters of security classification are reserved to the sole discretion of prison officials.  See Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994).

[5]  Having found no constitutional violation, the Court need not consider Defendant's qualified immunity claim.

A separate Order follows

                                /s/

March 26, 2015                           _____

                             George L. Russell, III
                             United States District Judge